IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-61636-crm |
| | ) | |
| SOUTHERN GOLF PARTNERS, LLC, | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**EMERGENCY MOTION OF DEBTOR FOR AUTHORITY TO OBTAIN
POSTPETITION CREDIT SECURED BY SENIOR LIENS**

COMES NOW Southern Golf Partners, LLC ("Debtor"), debtor and debtor in possession in the above-styled case, and seeks the entry of an Order by the Court, pursuant to 11 U.S.C. § 364(d) and Fed. R. Bankr. P. 4001(c), authorizing Debtor to obtain postpetition credit secured by a senior lien on property of the estate. In support thereof, Debtor shows as follows:

1. On January 20, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and has continued in possession of its property and management of its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee or examiner has been appointed in the case.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under pursuant to 28 U.S.C. § 157(b)(2)(D).

**BACKGROUND**

3. The Debtor is engaged in the retail golf equipment and related apparel business and currently operates nine (9) retail stores in Georgia, Florida, North Carolina, and Alabama. The Debtor maintains its headquarters in Atlanta, Georgia. The remaining operating store locations are located in: (1) Daphne, Alabama; (2) Aberdeen, North Carolina; (3) Martinez,

Georgia; (4) Macon, Georgia; (5) Lake Park, Georgia; (6) Leesburg, Georgia; (7) Panama City Beach, Florida; (8) Destin, Florida; and (9) Ocala, Florida.

4. The Debtor is 94% owned by A. Boyd Simpson and David H. Cofrin. A. Boyd Simpson is the Sole Manager of the Debtor and is responsible for day to day operations of the Debtor's business.

5. State Bank and Trust Company ("State Bank") may assert liens and security interests in some or all of the Debtor's inventory (the "Inventory"), as security for a line of credit and a standby-letter of credit pursuant to agreements entered into by the Debtor and The Buckhead Community Bank or February 1, 2008. As of the Petition Date, the Debtor's obligations under such line of creditor and stand-by letter of credit are believed to total approximately three million (the "Pre-Petition Indebtedness.").

6. The Pre-Petition Indebtedness relates back to a line of credit and standby letter of credit originally provided by The Buckhead Community Bank on or about February 1, 2006, and a UCC filed contemporaneously therewith. On or about December 4, 2009, The Buckhead Community Bank was closed by the Georgia Department of Banking and Finance, and the FDIC was appointed as receiver. Immediately thereafter, State Bank acquired certain assets and deposits of The Buckhead Community Bank, including, upon information and belief, The Buckhead Community Bank's interest in all or part of the Pre-Petition Indebtedness. The transition of the assets from The Buckhead Community Bank to State Bank might raise legal issues or potential defenses of which the Debtor is not currently aware, but does not waive.

7. In addition, Tailor Bilt Golf Inc. ("Tailor Bilt") may assert a lien, junior to that of State Bank on the Debtor's inventory in two of the Debtor's retail locations, and a blanket lien on the Debtor's remaining assets with respect to such two retail locations. Further, Acushnet

Company ("Acushnet") may assert a lien may assert a lien, believed to be junior to that of State Bank and/or Tailor Bilt, on certain specific inventory of the Debtor. As the Pre-Petition Indebtedness greatly exceeds the value of the Inventory, the Debtor believes that Tailor Bilt and Acushnet are effectively unsecured creditors, and that any liens they may assert have no value. Nevertheless, State Bank, Tailor Bilt and/or Acushnet may assert that the proceeds received from the Inventory and other assets are "cash collateral" as defined in 11 U.S.C. § 363(a).

8. The Debtor has filed an Emergency Motion for Use of Cash Collateral, seeking authority to use cash collateral to pay its ordinary, ongoing business expenses as set forth in a budget to be approved by the Court, and granting State Bank replacement liens (the "State Bank Replacement Lien") in post-petition inventory to the extent and priority they existed as of the Petition Date. Furthermore, to the extent that the liens of Tailor Bilt or Acushnet are determined to have any value, they will be given replacement liens (the "Tailor Bilt Replacement Lien" and the "Acushnet Replacement Lien") in post-petition inventory to the same extent and in the same order of priority as existed as of the Petition Date.

9. Based on the Debtor's projected revenues and expenses, the Debtor calculates that it will temporarily run out of cash some time during the week ending February 6, 2010 or earlier, and requires an immediate infusion of cash in an amount of up to One Million Dollars ($1,000,000) in order to continue operating as a going concern. Debtor believes that the cash shortage will end within three (3) months of the Petition Date as revenues improve with the weather and the cyclical retail golf business increases with the coming of spring.

10. The imminent cash shortage of the Debtor is caused by a number of factors, including the general economic recession and the seasonal nature of the golf retail business. Moreover, the Debtor have had to close a number of poorly-performing locations, but the

positive economic effect from the cost savings associated with store closings is not yet reflected in the Debtor's current cash flow.

## SUMMARY OF RELIEF REQUESTED

11. Debtor seeks to obtain, on an emergency basis, secured postpetition financing from SGP DIP Lender, LLC (the "DIP Lender") pursuant to the Revolving Line of Credit Note and Security Agreement ("DIP Agreement"), a copy of which is attached hereto as Exhibit "A." The DIP Lender is an entity formed by the majority owners of the Debtor – A. Boyd Simpson and David H. Cofrin -- for the purpose of providing the proposed DIP financing to the Debtor.

12. The proposed financing will be made pursuant to 11 U.S.C. § 364(d) and will provide DIP Lender with a lien on all property of the estate (the "DIP Lien"), except claims arising solely under the Bankruptcy Code, to the extent of any outstanding balance on the DIP Loan. The DIP Lien will be junior to the State Bank Replacement Lien, but senior to both the Tailor Bilt Replacement Lien and the Acushnet Replacement Lien. (As noted previously, as the Pre-Petition Indebtedness owed to State Bank greatly exceeds the value of the Debtor's inventory, and the liens of Tailor Bild and Acushnet are junior to that of State Bank, the Debtor asserts that the Tailor Bilt Replacement Lien and the Acushnet Replacement Liens have no material value.)

13. Debtor also seeks, pursuant to Fed. R. Bankr. P. 4001(c)(2), that an initial hearing be conducted before the 15 day notice period set forth therein expires to enable Debtor to obtain credit to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

**BASIS FOR RELIEF UNDER 11 U.S.C. § 364(d)**

14. The credit facility afforded by the DIP Agreement is necessary to maintain the value of the Debtor's assets, including its going concern value and customer goodwill, and to pay its employees until such time as Debtor's expected temporary cash shortage abates.

15. Debtor anticipates that its cash shortage will end within three months as revenues improve and the cost savings achieved by store closings begin to appear in the Debtor's cash flow.

16. Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain sufficient unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense.

17. Section 364(d) provides authority for the Court, after notice and a hearing, to:

    authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

    (A) the trustee is unable to obtain such credit otherwise; and

    (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

18. Debtor has limited unencumbered assets other than claims arising under the Bankruptcy Code. The principal assets of the Debtor consist of the existing inventory in its stores and the potential value of its remaining leases. As of the Petition Date, the balance of the obligations that are secured by the State Bank Replacement Lien totals approximately three million dollars. Thus, very little, if any, equity exists that may be granted as collateral to a DIP lender. Furthermore, there is insufficient eligible collateral to entice a DIP lender to accept a junior lien position given the risk that values may be overstated or cannot be converted to cash at their stated value.

19. For these reasons, Debtor has been unable to obtain credit on equally favorable terms.

20. Section 364(d)(1)(B) authorizes the Debtor to incur debt secured by a senior or equal lien on property of the estate already subject to a lien only if "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. §364(d)(1)(B).

21. Because the DIP Lien will be subordinate to the State Bank Replacement Lien, State Bank need not be provided with adequate protection. The DIP Lien will be senior to the Tailor Bilt Replacement Lien and the Acushnet Replacement Lien, but the Debtor asserts that these lienholders have such minimal equity that they may be considered essentially unsecured. The Debtor need not, therefore, provide adequate protection pursuant to §364(d)(1)(B) to these subordinate lienholders.

## THE PROPOSED DIP AGREEMENT

22. A summary of the key terms of the proposed DIP Agreement are as follows:

Amount: Up to $1,000,000.00 pursuant to a Revolving Note

Interest Rate: 9.00%

Fees: None

Maturity: December 31, 2010

Security: Lien, subordinate only to the liens of State Bank, on all property of the estate whether now existing or hereinafter acquired, but excluding all claims and causes of action arising solely under Title 11 of the United States Code.

## RELIEF REQUESTED

23. Debtor requests that the Court enter an order authorizing Debtor to enter into the DIP Agreement and to incur the secured obligations as provided in the proposed DIP Agreement

and the proposed DIP Loan Order. The Debtor further seeks authorization to deliver, perform, and consummate the DIP Agreement and to perform all other acts and to make, execute, and deliver all such other and further instruments and documents that may be required for performance thereof.

24.     Debtor further requests that the automatic stay imposed under § 362 of the Bankruptcy Code be modified so as to allow Debtor to grant security interests and liens in favor of the DIP Lender to the extent of the outstanding balance of the DIP Loan and to enable the parties to take any other actions that may be necessary to comply with the terms and conditions of the DIP Agreement.

## **NOTICE**

25.     This Motion and Order and Notice of Hearing shall be served upon (i) the U.S. Trustee, (ii) Debtor's twenty largest unsecured creditors, (iii) the Internal Revenue Service; (iv) the Georgia Department of Revenue; (v) State Bank, Tailor-Bilt, and Acushnet and their counsel; (vi) and parties that have requested notice by U.S. Mail in accordance with Fed. R. Bankr. P. 2002.

WHEREFORE, the Debtor prays that this Court enter an Order:

(a)     authorizing Debtor to enter into the Revolving Line of Credit Note and Security Agreement;

(b)     authorizing Debtor to immediately obtain credit in the amount of $1,000,000 as described herein and in the Revolving Line of Credit Note and Security Agreement;

(c)     authorizing Debtor to take such acts and to execute such documents as may be required to consummate the Revolving Line of Credit Note and Security

Agreement and modifying the automatic stay to the extent required to accomplish same; and

(d) providing such other and further relief as the Court deems just and proper.

This 26th day of January, 2010.

Respectfully submitted,

SCROGGINS & WILLIAMSON
Counsel for the Debtor

| | |
|---|---|
| 1500 Candler Building | /s/ J. Hayden Kepner, Jr. |
| 127 Peachtree Street, NE | J. ROBERT WILLIAMSON |
| Atlanta, GA 30303 | Georgia Bar No. 765214 |
| (404) 893-3880 | J. HAYDEN KEPNER, JR. |
| | Georgia Bar No. 416616 |

## REVOLVING LINE OF CREDIT NOTE AND SECURITY AGREEMENT

_____, 2010

**STATE OF GEORGIA** )
                               )
**COUNTY OF FULTON** )

      **FOR VALUE RECEIVED,** the Undersigned Southern Golf Partners, LLC, a Georgia limited liability company, ("SGP"), promises to pay to the order of SGP DIP Lender, LLC ("Lender") (together with any holder hereof, the "Holder"), at 1401 Peachtree Street, Suite 400, Atlanta, Georgia 30309 or at any such other place as the Holder may designate in writing, the principal sum of up to One Million and No/100 Dollars ($1,000,000.00, or so much as may be advanced hereunder, plus all accrued and unpaid interest on the unpaid balance of such principal amount at the rate of interest described below until full and final payment. All advances made by the Lender under this Note and all repayments by the Undersigned, if any, shall be evidenced by a schedule attached to this Note. The Undersigned may request advances under this Note as may be necessary for the operations of the Undersigned in its business judgment; provided, however, that any advances shall be made at the sole discretion of Lender, who is under no obligation to make any advances that may be requested by the Undersigned.

      Interest on the unpaid principal balance of the loan evidenced by this Note shall accrue at an annual rate (computed on the basis of actual days elapsed over a 360-day year) of nine percent (9%). The Undersigned shall pay all costs of collection, including fifteen percent (15%) of the principal and interest as attorneys' fees, if this Note is collected by legal action or through an attorney at law.

      All accrued and unpaid interest shall be due and payable in full on the first business day of each calendar month, beginning March 1, 2010, and upon final payment. All unpaid principal, together with all accrued and unpaid interest and all other indebtedness evidenced by this Note, shall be due and payable in full in immediately available funds and in lawful money of the United States of America on or before December 31, 2010 (the "Termination Date").

      The Undersigned may, so long as no Event of Default (as herein defined) has occurred and is continuing, borrow, repay principal borrowed, and reborrow principal in aggregate installments outstanding at any one time up to the maximum principal amount hereof and until the Termination Date specified above.

      The Undersigned shall have the right at any time to prepay the indebtedness represented by this Note in whole or in part without premium or penalty, but with accrued interest to the date of such prepayment on the principal amount prepaid.

      As security for the payment of this and any other liability of the Undersigned to the Holder, irrespective of the nature of such liability or the time it arises, the Undersigned hereby grants a security interest to the Holder in all property of the Undersigned, including all inventory,

accounts, accounts receivable, notes, equipment, contract rights, intangibles, and choses in action now owned or hereafter acquired, but specifically excluding all claims and causes of action of the Debtor that arise solely under the Bankruptcy Code.  The Undersigned further authorizes the Holder, with approval of the Bankruptcy Court to the extent the Bankruptcy Court retains jurisdiction over the Undersigned's bankruptcy estate, to apply any indebtedness due or to become due from Holder to the Undersigned in satisfaction of any liability described in this paragraph.

Upon the occurrence of one or more Events of Default as defined herein:

(a)     any and all of the debts and liabilities of the Undersigned to the Holder, whether contained herein or otherwise, may, at the option of the Holder and without demand or notice of any kind, be declared and immediately become due and payable in full, and the Holder may exercise any rights available to it at law and in equity, or available under any agreement, relating to any liability of the Undersigned to the Holder, all such actions being subject to approval of the Bankruptcy Court to the extent the Bankruptcy Court retains jurisdiction over the Undersigned's bankruptcy estate and such approval is required under Title 11 of the United States Code;

(b)     interest accruing under this Note shall accrue at twelve percent (12%) per annum.

The following shall constitute "Events of Default" hereunder:

(1)   the failure by the Undersigned to pay when due any principal or interest hereunder;  (2) the Undersigned's existing Bankruptcy Case No. 10-61636 (the "Case") is dismissed or converted to one under chapter 7 of the Bankruptcy Code; (3) a Chapter 11 trustee is appointed in the Case; (4) the Undersigned, unless required under Title 11 of the U.S. Code or with the approval of the Bankruptcy Court in the Case, (i) terminates or attempts to terminate its obligations under this Note or (ii) fails to comply with or perform any covenant, provision, term or condition of this Note; (5) the Undersigned shall (i) default in the payment of any principal of, or premium, if any, or interest on, or other payment with respect to any postpetition indebtedness incurred in the Case or (ii) default with respect to any of the terms of any of such  postpetition indebtedness or of any agreement relating thereto, and such default or event of default gives the holder of the obligation (x) the right to accelerate such indebtedness (whether or not such holder has, in fact, accelerated such indebtedness), or (y) the right to take action with respect to any collateral therefor.

The failure or forbearance of the Holder to exercise any right hereunder, or otherwise granted to it by law or another agreement, shall not affect or release the liability of the Undersigned, and shall not constitute a waiver of such right unless so stated by the Holder in writing.

Time is of the essence in the payment and performance of this Note.  This Note shall be governed by and construed in accordance with the substantive laws of the State of Georgia.

2

**THE UNDERSIGNED HEREBY WAIVES ALL RIGHTS TO PRESENTMENT, PROTEST AND NOTICE OF DISHONOR.**

This Note is executed under the hand and seal of the Undersigned on the date first above written.

SOUTHERN GOLF PARTNERS, LLC

By:_____
    A. Boyd Simpson, Manager

3